IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No.  10-cv-01238-CMA-MJW

MALINA V.  LAZAROV,

Plaintiffs,

v.

JAMES KIMMEL,
SUZANNE STAIERT,
JOHN JONES,   and
TRENT COOPER,

Defendants.

---

## RECOMMENDATION ON
### (1) DEFENDANTS' COMBINED MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT (CM/ECF DOCKET NO. 15) PURSUANT TO FED. R. CIV. P. 12(B)(6) (Docket No. 17)
### and
### (2) PLAINTIFF'S MOTION TO DISMISS DEFENDANTS' COMBINED MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT (Docket No. 30)

---

**MICHAEL J. WATANABE**
**United States Magistrate Judge**


This matter is before this court pursuant to an Order of Reference to Magistrate

Judge issued by Judge Christine M. Arguello on June 4, 2010 (Docket No. 7).

## PLAINTIFF'S ALLEGATIONS

This case was removed by the defendants from the Arapahoe County District

Court.  The pro se plaintiff asserts the following in her Amended Complaint (Docket No.

15), which is not a model of clarity and which is brought pursuant to 42 U.S.C. § 1983.

She was convicted by a jury on August 22, 2008, for violating a Littleton Ordinance,

2

6-14-16: Public Officials, Obstruction of Duties: (A) Resisting the Duties of Public

Officials: 7. False Information, but she had not committed that crime.  The "guilty verdict

resulted from a deception that Defendants J. Kimmel, former Municipal Judge, City of

Littleton, and John Jones, with the Littleton Police Department, and the prosecuting

attorney fed to my jury–through an array of illegal means–that I was guilty of this

charge."  (Docket No. 15 at 2).

Plaintiff's encounters with the defendants began on April 2, 2008, when she went

to the Littleton Police Station to seek a ticket for harassment against a next-door

neighbor, Joshua Valverde, who in collusion with his girlfriend had harassed plaintiff for

about a year by making mean faces at her in front of her windows and by making

"excessive noise and unprovoked insults, aimed at forcing [her] to move out of [her]

rental, which [she] had remodeled at [her] cost of a few thousand dollars."  (Docket No.

15 at 3).  Mr. Valverde has a one-year old daughter, and his girlfriend has a seven-year

old daughter.  Their "allies in the war against" plaintiff were over a dozen neighbors who

also had minor children or grandchildren.  All of them harassed their neighbors with

excessive noise, "dirty tricks," and enticing their children to be noisy while playing in the

small, grassy courtyard between the two buildings of the rental complex.  They also

invited great numbers of visitors of all ages and had them make as much bothersome

noise as they could.  Plaintiff "was the chief target of these lowlifes" because she

complained several times to management and sporadically filmed their behavior at the

complex from inside her apartment for the purpose of pursing litigation against them.

(Docket No. 15 at 3).

Plaintiff sought police help because she worked full time, mostly at night, and the

neighbors' disruptive behavior was a risk to her job since it prevented her from resting and sleeping during the day.  Because of the noisy conditions at the complex during the ten years she has lived there, plaintiff has lost two full-time jobs in her field and a large number of privileges to work at area hospitals.  Plaintiff spoke with defendant Officer Jones for 30 to 40 minutes and videotaped eleven minutes of the conversation. Lieutenant Cooper joined them at the end of their conversation.  Plaintiff told Jones about her plight with her neighbors, and he reluctantly agreed to issue a harassment ticket to Mr. Valverde, but he stated that her neighbors' minor children could legally make as much bothersome noise as they wanted in the common area of the complex from 7 a.m. to 10 p.m., seven days a week.  Jones then threatened plaintiff with a ticket for false reporting to the Littleton Police if she ever dared to complain to them about the children making such noise during those hours.  Jones claimed the Littleton Noise Control Ordinance made the children's disruptive behavior between those hours legal. Jones and Cooper refused to do anything about the harassment plaintiff had suffered by another next-door neighbor.  In addition, Jones refused to read or accept plaintiff's four-page complaint against Mr. Valverde, refused to accept or listen to her evidence of the incident (a sixteen-minute audio DVD which featured two unprovoked insults directed by Mr. Valverde toward plaintiff from a public place), and did not write a report about their meeting, which was a violation of his professional Code of Conduct.

That evening, Jones came to the rental complex and spoke to both of plaintiff's next-door neighbors, Mr. Valverde and his girlfriend, and to another couple of neighbors who had harassed plaintiff (a family who lived in the building across the courtyard who had a two-year old son).  Jones did not speak with plaintiff and never issued a ticket to

4

Mr. Valverde for harassment as agreed earlier in the day.

Plaintiff subsequently read the Littleton Noise Control Ordinance and believes that Jones' threat on April 2, to issue plaintiff a ticket for false reporting for complaining to the Littleton Police Department about bothersome noise made by children in the common complex area during the day, was illegal because in her opinion, there was no law in the Ordinance justifying such behavior.

After Jones spoke with the neighbors, they and "the rest of their rogue allies at the complex drastically stepped up their harassment" such that she could not have even one minute of peace or quiet during the day. (Docket No. 15 at 5). Consequently, and because plaintiff believed Jones' "threat" on April 2 was illegal, plaintiff made another harassment-related call to the Littleton Police Department against Mr. Valverde on May 3, 2008. She made that call because that day Mr. Valverde brought two children who were the children of friends of his to the complex and had them make bothersome noise in the common area all day long. "After over five hours of his deliberate provocation," plaintiff called the police. She had videotaped 48 minutes of the bothersome noise the two girls made and had prepared a written complaint on Mr. Valverde.

Jones arrived at plaintiff's apartment and issued her a ticket for false reporting. Plaintiff had Jones call his supervisor, Lt. Cooper, to the scene and complained to him about her citation, but he backed up Jones. Plaintiff videotaped her conversation with the officers. Jones threatened to jail plaintiff the next time she placed such a call to the Littleton police against any parent of minor children making bothersome noise in the common complex area from 7 a.m. to 10 p.m. and explained that the bond to get out of jail was $950. He also admitted that on April 2 he had told her neighbors who had

minor children and grandchildren to make as much noise as they pleased while playing in the common area during those hours and encouraged the parents to direct at plaintiff any unprovoked insults and curses they could think of as their expression of free speech under the First Amendment.

The officers' pronouncements in the presence of a few of the plaintiff's neighbors encouraged them to start harassing plaintiff.  Mr. Valverde started mowing the courtyard, and another started bouncing a basketball on the cement path that runs across the courtyard, a few yards from her apartment.

On May 8, 2008, Jones returned to the complex, on his own volition, and on the advice of prosecuting attorney Alan Katz, threatened plaintiff with more reprisals and re-encouraged her neighbors to keep on breaking state and municipal noise control and public order laws, together with the noise clause of the lease and covenant of quiet enjoyment.  He told plaintiff those civil contracts were illegal and he would work with management to have the noise clause wiped out.  One his threats was that plaintiff stop filming her bad neighbors' disruptive behavior from inside her apartment or face a charge for disorderly conduct.  He also advised her to either wear earplugs or move out. Plaintiff recorded that conversation.

Plaintiff's performance on her job deteriorated to a point where she lost her job and livelihood in her field for life.  With the exception of three weeks in 2009, she has been unemployed since June 2008.

Prior to her August 22, 2008 trial, in an attempt to have her citation cancelled, plaintiff talked with the prosecuting attorney, Alan Katz, and the Littleton City Attorney, defendant Suzanne Staiert, but "they disagreed, on absurd, ludicrous, and illegitimate

grounds . . . . and prosecuted [plaintiff] in a political, fixed trial, which had devastating implications for [plaintiff's] life."  (Docket No. 15 at 6).

Based upon the above, plaintiff raises the following three claims for relief: (1) her First Amendment rights to free speech and freedom of assembly were violated, (2) her illegal sentence is an infringement of her Eighth Amendment right which protects against excessive fines and cruel and unusual punishment, and (3) her due process and equal protection rights were violated based upon her loss of employment and employability in her field, her home being turned into a "torture chamber" and "her life into hell on earth between these hours," discrimination based on her membership in a definable class of people who do not have minor children, denial of the protection of her contract, namely her lease and the covenant of quiet enjoyment, malicious prosecution, and use of illegal actions to defeat her at trial.

Plaintiff seeks only monetary relief.

## PENDING MOTIONS TO DISMISS

Now before the court for report and recommendation are the following two motions: (1) the Defendants' Combined Motion to Dismiss Plaintiff's Amended Complaint (CM/ECF Docket No. 15) Pursuant to Fed. R. Civ. P. 12(b)(6) and Brief in Support of Motion (Docket No. 17) and (2) the plaintiff's Motion to Dismiss Defendants' Combined Motion to Dismiss Plaintiff's Amended Complaint (Docket No. 30), which this court has construed as opposition to the defendants' motion to dismiss and/or a motion to strike the defendants' motion.  Plaintiff also filed a response to the defendants' motion (Docket No. 31), and the defendants filed a reply (Docket No. 35).  This court denied plaintiff's multiple attempts to file a sur-reply and to strike the reply.  (See Docket Nos.

41, 46, 60, 78).  In an Order entered on January 18, 2011 (Docket No. 89), Judge

Arguello, *inter alia*, denied plaintiff's Moton [sic] for Reconsideration of Magistrate's

Order Granting Defendants' Motion to Strike Plaintiff's "Resposive [isc] Pleading to Thiis

[sic] Court's Order Denying Her Motion to Dismiss Plaintiff's Amended Complaint

Pursuant to Court Orders and D.C.COLO.LCivR 7.1, and directed that "[n]o further

attempts by Plaintiff to file a surreply to Defendants' Combined Motion to Dismiss (Doc.

# 17) will be tolerated, without a showing of good cause, and any such filing will be

stricken from the record, when no good cause has been shown . . . ."  (Docket No. 89 at

18).

Defendants seek dismissal of the Amended Complaint with prejudice in its

entirety pursuant to Fed. R. Civ. P. 12(b)(6) on the following grounds: (1) plaintiff's

Complaint fails to state a claim under the First, Eighth, and Fourteenth Amendments

and 42 U.S.C. § 1983; (2) absolute judicial immunity bars plaintiff's claims against

defendant Kimmel; (3) absolute prosecutorial immunity bars plaintiff's claims against

defendant Staiert; and (4) qualified immunity also bars plaintiff's claims against all

defendants.

For purposes of a motion to dismiss pursuant to Rule 12(b)(6), the court must

accept all well-pled factual allegations in the complaint as true and resolve all

reasonable inferences in the plaintiff's favor.  <u>Morse v. Regents of the Univ. of Colo.</u>,

154 F.3d 1124, 1126-27 (10th Cir. 1998); <u>Seamons v. Snow</u>, 84 F.3d 1226, 1231-32

(10th Cir. 1996).  A motion to dismiss pursuant to Rule 12(b)(6) alleges that the

complaint fails "to state a claim upon which relief can be granted."  Fed. R. Civ. P.

12(b)(6).  "A complaint must be dismissed pursuant to Fed. R. Civ. P. 12(b)(6) if it does

8

not plead 'enough facts to state a claim to relief that is plausible on its face.'" Cutter v. RailAmerica, Inc., 2008 WL 163016, *2 (D. Colo. Jan. 15, 2008) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570, 127 S. Ct. 1955, 1974 (2007)). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, . . . a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atlantic Corp., 550 U.S. at 545 (citations omitted). "Factual allegations must be enough to raise a right to relief above the speculative level." Id. "[A] plaintiff must 'nudge [] [his] claims across the line from conceivable to plausible' in order to survive a motion to dismiss. . . . Thus, the mere metaphysical possibility that *some* plaintiff could prove *some* set of facts in support of the pleaded claims is insufficient; the complaint must give the court reason to believe that *this* plaintiff has a reasonable likelihood of mustering factual support for *these* claims." Ridge at Red Hawk, L.L.C. v. Schneider, 493 F.3d 1174, 1177 (10th Cir. 2007) (quoting Bell Atlantic Corp., 127 S. Ct. at 1974).

Plaintiff is proceeding *pro se.* The court, therefore, reviews her pleadings and other papers liberally and holds them to a less stringent standard than those drafted by attorneys. Trackwell v. United States Government, 472 F.3d 1242, 1243 (10th Cir. 2007). See Haines v. Kerner, 404 U.S. 519, 520-21 (1972) (holding allegations of a *pro se* complaint to less stringent standards than formal pleadings drafted by lawyers). However, a *pro se* litigant's conclusory allegations without supporting factual averments are insufficient to state a claim upon which relief can be based. Hall v. Bellmon, 935 F.2d 1106, 1110 (10th Cir. 1991). A court may not assume that a plaintiff can prove

9

facts that have not been alleged or that a defendant has violated laws in ways that a

plaintiff has not alleged.  See Associated Gen. Contractors of Cal., Inc. v. California

State Council of Carpenters, 459 U.S. 519, 526 (1983).  See Whitney v. New Mexico,

113 F.3d 1170, 1173-74 (10th Cir. 1997) (court may not supply additional factual

allegations to round out a plaintiff's complaint or construct a legal theory on plaintiff's

behalf); Drake v. City of Fort Collins, 927 F.2d 1156, 1159 (10th Cir. 1991) (the court

may not "construct arguments or theories for the plaintiff in the absence of any

discussion of those issues").  "The plaintiff's *pro se* status does not entitle [her] to

application of different rules." Wells v. Krebs, 2010 WL 3521777, at *2 (D. Colo. Sept.

1, 2010).

A judge is absolutely immune from suit for acts taken within his judicial capacity.

Whitesel v. Sengenberger, 222 F.3d 861, 867 (10th Cir. 2000).  To overcome absolute

judicial immunity, a plaintiff must demonstrate that a judge's actions were either outside

the judge's judicial capacity or were taken in the complete absence of all jurisdiction.

Mireles v. Waco, 502 U.S. 9, 11-12 (1991) (per curiam).  A judge acts in the clear

absence of all jurisdiction only when he "acts clearly without any colorable claim of

jurisdiction." Snell v. Tunnell, 920 F.2d 673, 686 (10th Cir. 1990).  Here, even construing

the plaintiff's allegations liberally, all of the plaintiff claims against defendant Kimmel

concern Judge Kimmel's actions taken exclusively in his judicial capacity during the

plaintiff's trial and sentencing.  Plaintiff seems to contend that the Judge conspired with

the other defendants to deny plaintiff a fair and unbiased trial, but judicial immunity is

not overcome by allegations of bad faith or malice by the judge. Mireles, 502 U.S. at

11.  See Dennis v. Sparks, 449 U.S. 24, 27 (1980) (judicial immunity not overcome even

10

where a claimant alleges a judge conspired with others).  None of the plaintiff's

allegations overcome Judge Kimmel's absolute judicial immunity because they do not

demonstrate that he acted outside of his official capacity or in the complete absence of

jurisdiction.  Plaintiff merely seems to disagree with the Judge's handling of the

plaintiff's case as well as with the verdict and sentencing imposed, but the claims raised

by the plaintiff here do not overcome the absolute judicial immunity.  Therefore,

plaintiff's claims against defendant Kimmel should be dismissed with prejudice.

"State prosecutors are entitled to absolute immunity against suits brought

pursuant to § 1983 intimately associated with the judicial process." Gagan v. Norton, 35

F.3d 1473, 1475 (10th Cir. 1994) (internal quotations omitted).  Prosecutors are entitled

only to qualified immunity, however, for investigative or administrative actions. Id.  To

determine whether a prosecutor is entitled to absolute or qualified immunity, "the

determinative factor is advocacy because that is the prosecutor's main function." Id.

(internal quotations omitted).  Plaintiff here seems to be alleging that defendant

prosecutor Suzanne Staiert continued to prosecute the plaintiff's case when she should

have dismissed it, did not properly conduct the trial, and conspired with the other

defendants to deny plaintiff a fair trial.  The acts complained of by plaintiff, however, are

those that are intimately associated with the judicial process, undertaken as part of Ms.

Staiert's prosecutorial duties, and undertaken in her role as an advocate.  Therefore,

Ms. Staiert is also absolutely immune from suit, and the plaintiff's claims against her

should also be dismissed with prejudice.

The only claims remaining would thus be those against the two police officers,

Officer Jones and Lt. Cooper.  Here, the two defendants, as well as defendants

11

Kimmel and Staiert, assert that they are entitled to qualified immunity.  "The

doctrine of qualified immunity protects government officials 'from liability for civil

damages insofar as their conduct does not violate clearly established statutory or

constitutional rights of which a reasonable person would have known.'" Pearson v.

Callahan, 555 U.S. 223, 129 S. Ct. 808, 815 (2009).  It "balances two important

interests - the need to hold public officials accountable when they exercise power

irresponsibly and the need to shield officials from harassment, distraction, and

liability when they perform their duties reasonably." Id.  "Qualified immunity shields

an officer from suit when [he] makes a decision that, even if constitutionally

deficient, reasonably misapprehends the law governing the circumstances [he]

confronted." Brosseau v. Haugen, 543 U.S. 194, 198 (2004).  "Because the focus

is on whether the officer had fair notice that [his] conduct was unlawful,

reasonableness is judged against the backdrop of the law at the time of the

conduct.  If the law at that time did not clearly establish that the officer's conduct

would violate the Constitution, the officer should not be subject to liability or,

indeed, even the burdens of litigation." Id.

When a defendant raises a qualified immunity defense, the plaintiff "bears

the burden of showing that: (1) the defendants' actions violated a constitutional or

statutory right; and (2) the right was clearly established and reasonable persons in

the defendants' position would have known their conduct violated that right." Cruz

v. City of Laramie, Wyo., 239 F.3d 1183, 1187 (10th Cir. 2001).  The Supreme Court

has held that the federal courts have discretion to determine "which of the two prongs of

the qualified immunity analysis should be addressed first in light of the circumstances in

the particular case at hand." Pearson v. Callahan, 129 S. Ct. at 815-16.

"Requiring the law to be clearly established provides defendants with 'fair warning' that their conduct is unconstitutional." Mimics, Inc. v. Village of Angel Fire, 394 F.3d 836, 841 (10th Cir. 2005). "The law is clearly established when a Supreme Court or Tenth Circuit decision is on point, or if the clearly established weight of authority from other courts shows that the right must be as plaintiff maintains." Id. (quotations omitted). To be clearly established:

> [t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right. This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful, but it is to say that in the light of pre-existing law the unlawfulness must be apparent.

Anderson v. Creighton, 483 U.S. 635, 640 (1987) (citation omitted). "Thus, qualified immunity leaves ample room for mistaken judgments, . . . and protects all but the plainly incompetent or those who knowingly violate the law." Harman v. Pollock, 586 F.3d 1254,  (10th Cir. 2009) (internal quotations omitted).

In the instant case, this court agrees with the defendants that the plaintiff has not met her burden.  Plaintiff's allegations in the Complaint are not a model of clarity, but she has not established that the defendants' actions violated the First, Eighth, or Fourteenth Amendment.  Plaintiff's complaints about certain neighbors and their children, grandchildren, and visitors making "bothersome noise" such as while playing, bouncing a basketball, and mowing the lawn, allegedly in violation her lease agreement is, as asserted by defendants, a private grievance, not a First Amendment claim. Furthermore, plaintiff was placed on notice by Officer Jones that there was no basis for a charge of harassment against her neighbors based upon noise made in the common

areas during certain daytime hours because the noise ordinance on its face did not apply to the conduct plaintiff sought to stop.  Plaintiff has not established a violation of any clearly-established constitutional right by defendants Jones and Cooper as a result of the actions alleged, including refusing to grant plaintiff's request to charge her neighbor with harassment, deciding to charge plaintiff after she failed to heed their notice that there was no basis for her to continue to contact the Police Department to seek such charges against her neighbor(s), and allegedly telling neighbors that the children can play in the common areas during the daytime hours.  The fact that the plaintiff desires a noise ordinance that is applicable during daytime hours does not impose any duty upon the defendants.  Plaintiff has made no showing that reasonable persons in the defendants' position would have known their conduct violated any constitutional right.  In sum, even reading the Amended Complaint liberally, this court finds that the officer defendants are entitled to qualified immunity on the plaintiff's claims.

**WHEREFORE,** for the foregoing reasons, it is hereby

**RECOMMENDED** that the Defendants' Combined Motion to Dismiss Plaintiff's Amended Complaint (CM/ECF Docket No. 15) Pursuant to Fed. R. Civ. P. 12(b)(6) **(Docket No. 17)** be **granted** and that the **Amended Complaint be dismissed with prejudice**.  It is further

**RECOMMENDED** that the plaintiff's Motion to Dismiss Defendants' Combined Motion to Dismiss Plaintiff's Amended Complaint **(Docket No. 30)**, which this court has construed as a motion to strike and/or opposition to the defendants' motion to dismiss

14

(Docket No. 17), **be denied**.

**NOTICE:  Pursuant to 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b)(2), the parties have fourteen (14) days after service of this recommendation to serve and file specific written objections to the above recommendation with the District Judge assigned to the case.  A party may respond to another party's objections within fourteen (14) days after being served with a copy.  The District Judge need not consider frivolous, conclusive, or general objections.  A party's failure to file and serve such written, specific objections waives *de novo* review of the recommendation by the District Judge, <u>Thomas v. Arn</u>, 474 U.S. 140, 148-53 (1985), and also waives appellate review of both factual and legal questions. <u>Makin v. Colorado Dep't of Corrections</u>, 183 F.3d 1205, 1210 (10th Cir. 1999); <u>Talley v. Hesse</u>, 91 F.3d 1411, 1412-13 (10th Cir. 1996).**

Date:  January 21, 2011                    s/ Michael J. Watanabe
       Denver, Colorado                    Michael J. Watanabe
                                     United States Magistrate Judge